UNITED STATES ex rel. GUARANTY TRUST CO. OF NEW YORK v. GEHR.

(Circuit Court, N. D. West Virginia. July 24, 1902.)

1. CONTEMPT—APPLYING ABUSIVE EPITHETS TO JUDGE.

A man who came into a federal district from a distant state for the purpose of inciting a strike among miners, and who there publicly denounced the judge of such district for his official action in granting an injunction, using abusive language, and applying the most opprobrious epithets to him personally, *held* guilty of a contempt of court.

On Rule for Contempt.

Reese Blizzard, U. S. Dist. Atty., W. S. Meredith, and A. B. Fleming, for the rule.

John L. Gehr, in pro. per.

JACKSON, District Judge (orally). It is very painful to me to have to pass upon a case of this character under any circumstances whatever, but it is more than painful to have to do so when I have been made the subject of the abusive language which this man has used. If I were to-day sitting upon a case in which he had used the abusive language toward another officer of this court, either judge or otherwise, I would feel constrained to enter a judgment in this case that would not only serve as an admonition to him, but to all others, as a warning not to trespass upon the lines such as this man has trespassed upon. He has used villainous epithets. He has used the most uncouth language and applied the most opprobrious language to the court that he could well conceive of. Now, I have nothing vindictive in my character, and I do not intend upon this occasion, in my action upon this case, to give any one an opportunity to criticise the action of the court, for fear that they might attribute to the court a little spirit upon its part of revenge, which does not exist in my heart. Were I to-day dealing with this man for any other officer of this court, or for one of the judges of this court, instead of myself, I would unquestionably give him not less than a year in prison. He richly deserves it. He came to Clarksburg, as he admits, an emissary of this labor organization. He came there, he admits, for the purpose of getting the people to strike,—to better their condition, as he says. He comes 2,000 miles, and he has been in the state hardly long enough to get a seat in it, before he commences his tirade of abuse against this court. What does he know about this court personally? Why did he apply such epithets to this court? Officially, this court has a record all over this country. It knows its record; it knows its standing as a judge of the court just as well all over this country as it does at home. And yet he comes here as a braggart and bully, and reminds me of what I have read about the cowboys on the plains, and uses those vile epithets that have been detailed by the witnesses upon the stand; and, finally, when he is confronted with the witnesses, he has no evidence to offer, no excuse to offer, no explanation to make of his opprobrious epithets. He stands, as it were, like a prisoner at the bar, mute and silent, and finally winds up by saying, "I plead guilty to contempt in violation of the order of this court." Is he entitled to any sympathy or charity at the hands of the court? Is a man of this character deserving of it,—reckless not only of his own reputation, but so reckless that he must undertake to defame and besmirch the reputation of a judge who has sat upon the bench for nearly 41 years, and, I suspect very strongly, upon the bench before he was born, from the looks of him? He has my compassion, however. I must deal with this case entirely independent of the considerations that would influence me under different and other circumstances, if applied to another party. There shall be not the slightest evidence in my action upon this occasion of any vindictiveness upon my part. There is no revenge in my heart. I repeat upon this occasion that his remarks about this court are as the idle wind which passes by, and only creates a flutter of the locks of my gray hair.

What was your purpose? What was your motive? Why did you come here 2,000 miles to interfere in the business of others? Was it to ccme here to break down the law and order of this country? You say you have laws in Colorado, but I judge from your actions in this state that you had no respect for them, and never obeyed the laws of Colorado. Since you have come here, sir, I propose to teach you that in West Virginia we have law and order, and that while you remain within the state of West Virginia you will be required, like any other citizen, to obey the laws of the land. You have no right to come from Colorado here and disturb the peace and quiet and repose of a community to which you are an entire stranger. As I said to Mrs. Jones, one of your chief agitators, when she said to me that she had a right, as an American citizen, to come to this state, "Yes; each and every American citizen has a right to go from one state to another in this country, and to be protected by the laws and the institutions of the states, as well as by the courts of our central government;" but you have no right to come from Colorado and Pennsylvania and do that in this state which tends to create confusion and disorder and results in a violation of the law. Freedom of speech is guarantied, but the abuse or license that you people indulge in as freedom of speech is unprotected. It is the abuse of these great rights under the constitution, not under the Declaration of Independence (for there is not a word in the Declaration of Independence about it), as you people assert, but under the first amendment of the constitution of the United States, which protects freedom of speech; not licentiousness, not abuse of it, but the rightful use and enjoyment of freedom of speech. Is it right that a man should have the privilege, under that provision of the constitution, to incite treason and rebellion? Is the constitution a shield for him in the use of sentiments of that character? Does it protect him in advocating the destruction of the institutions of the country? Are communism and anarchy, and all the dire evils which follow in the train of such people as you, who are preaching the most detestable heresies and doctrines, to be protected by the constitution of the United States? No; never, never, never. And to-day, sir, I am confronted with you uttering the seditious sentiments that you have uttered in this state, and branding a judge with the infamous epithets that you have used. I want you to understand that there is a limit to these things, and that the law prescribed that limit, not only here, but everywhere in the United States, as well as Colorado. I regret, I sincerely regret, to be compelled to take notice of a case of a personal character; but a duty to my country, and a duty to the high office that I hold, and respect for the judicial character of the office, compels me to discharge a public duty upon this occasion, although to some extent personal. It is very trying. If it were not for the personal character of this case, I should undoubtedly confine you for a long time in the public prison of the state, but, inasmuch as it is to a great extent personal, I shall content myself with imposing a most moderate sentence, entirely inadequate to the great offense that you have committed. The punishment is ninety days in jail.