## COONS *v.* STATE OF INDIANA.

[No. 23,924.    Filed February 21, 1922.]

1. CONTEMPT.—*Right to Change of Venue from Judge.*—One charged with contempt of court is not entitled to a change of venue from the judge.    p. 586.

2. CONTEMPT.—*Writ.*—*Issuance Prior to Statement Charging Contempt.*—A writ for production in court to make answer for contempt, not being dependent on the statement charging contempt, may be issued before such statement is filed.    p. 587.

3. CONTEMPT.—*Answer.*—*Reiterating Contemptuous Statements.* —*Right to File.*—The filing of an answer in a contempt proceeding was properly denied where the answer, instead of being an apology, explanation or denial, was only a reiteration of the alleged contemptuous statement on which the proceedings were based, and an argumentative discussion as to the rights of the accused in the premises.    p. 587.

4. CONTEMPT.—*Grand Jury Report.*—*Accusation of Judge.*— *Statutes.*—The statutes (§§1961, 1978, 2041 Burns 1914, Acts 1905 p. 584, §§93, 107, 170) governing the duties of the grand jury contemplate only a presentment by indictment for felonies and misdemeanors, whether against officials or private individuals, and it is not the duty or privilege of the grand jury, where it deems the evidence insufficient to warrant the return of an indictment, to make accusations against citizens in the form of a report; hence it has no right, by a so-called report, to accuse the judge of conspiring to protect criminals, and such accusation is not privileged.    pp. 588, 589.

5. GRAND JURY.—*Duties.*—*Statutory Regulation.*—The duties of the grand jury are governed by statute, and it has no rights or privileges based upon the common law.    p. 589.

6. CONTEMPT.—*Grand Jury Report.*—*Statements as to Past Acts of Judge.*—Accusations in the report of a grand jury that the judge had been guilty of certain misconduct are none the less contemptuous because referring to matters that are no longer before the court.    p. 589.

7. CONTEMPT.—*Punishment.—Power of Court.*—A court of record of general jurisdiction always has power to punish as for contempt an officer thereof, such as a grand juror, for offending the dignity of the court. p. 590.

8. CONTEMPT.—*Direct Contempt.—Summary Punishment.*—For a direct contempt the offender may be punished instantly by arrest and fine or imprisonment upon no further proof or examination than what is known to the judge. p. 590.

9. CONTEMPT.—*Intention.*—Whether a contempt has been committed does not depend upon the alleged intention of the offending party, but upon his act. p. 591.

10. CONTEMPT.—*Libelous Statements.—Action for Libel.*—That a grand jury report made certain accusations against the judge which were libelous did not require him to proceed by action for libel instead of contempt proceedings. p. 591.

11. CONTEMPT.—*Report of Grand Jury.—Accusations against Judge.*—An accusation in a grand jury report that the judge had been guilty of misconduct in the trial and disposition of certain criminal cases, and requesting him to resign to promote the ends of justice, is a contempt. p. 592.

12. CONTEMPT.—*Direct Contempt.—Report of Grand Jury.*—A grand jury report filed in open court, if contemptuous, is a direct contempt, though the grand jurors had gone to their homes and were absent from the court when its contents became known. p. 593.

13. CONTEMPT.—*Direct Contempt.—Right to Arraignment.*—In a contempt proceeding the party charged does not have the privilege of an arraignment. p. 593.

14. CONTEMPT.—*Criminal Contempt.—Scope.—Purpose of Punishment.*—Criminal contempts of court embrace all acts committed against the majesty of the law or the dignity of the court, and the primary purpose of the punishment of offenders is the vindication of public authority, of which the court is the embodiment. p. 593.

From Delaware Circuit Court; *William A. Thompson,* Judge.

Prosecution by the State of Indiana against Lance M. Coons. From a judgment of conviction, the defendant appeals. *Affirmed.*

*Cromer & Long, Wilbur Ryman* and *Leffler, Ball & Leffler,* for appellant.

*U. S. Lesh,* Attorney-General, for the state.

TRAVIS, J.—This case is one of alleged contempt of court by appellant, acting at the time of such contempt as a grand juror. He, with the other five grand jurors, appeared in open court, and filed with the court what the grand jury termed to be its final report. The judge of the court did not know the contents of the report so filed until after the grand jury had separated and gone to their several homes; and on the day following the filing of such report, the judge prepared a written statement of such parts of such report which was alleged to constitute contempt of court; which written statement was set forth in the order of the court, and which directed the arrest of appellant. The written statement made by the court, in which was set forth the contemptuous language used by appellant and his co-grand jurors in their said report, is as follows: "Be it remembered that heretofore, to-wit:—December 19th, 1920, the following named parties, to-wit:—Lance M. Coons, et al, and the other five grand jurors, who were then and there members of and constituted the grand jury of Delaware Circuit Court for the September term, 1920, came into open court and as such jurors and in open court presented to the court for filing and to be filed what was by them denominated the grand jury's final report, which said report so presented was signed by each and all of said parties and by each and all presented to the court as aforesaid; that said report so presented and when presented in open court contained the following scandalous, false, libelous, and contemptuous language and paragraphs, to-wit:—

" 'The grand jury also laments the fact that the presiding judge is known by the members of the bar to be biased and prejudiced to such an extent that a large number of attorneys at the bar believe him to be so unfair in the trial of cases in his court, that they cannot get fair rulings and decisions from the judge, to such

an extent that the judge is known to take one side or the other in all cases tried before him, and is known to favor certain lawyers and disfavor certain other lawyers that practice law before him.' "

Also the following:—" 'The grand jury returned into the court after a further investigation, an indictment against Court Asher for burglary; who is generally known to be a law violator. Humble, law-abiding citizens wanting homes and citizens protected from thieves and burglars, and innocent women and children perhaps from death at the hands of burglars we think this man, Asher, who was charged with burglary, should have been punished and sent to prison. There was no doubt, from the evidence, as to the guilt of Court Asher. It was not denied. The presiding judge blocked the efforts of the prosecuting attorney and would not let the case go to the jury for a decision, but deliberately selected one of the petit jurors and requested him to sign a verdict of not guilty, and thereafter refused the prosecuting attorney permission to poll the jury.' "

Also the following:—" 'We are of the unanimous opinion that through a connivance and conspiracy on the part of the presiding judge, Court Asher, Tom Miller and others, the burglary case against Court Asher was fixed and understood between the parties that Court Asher would be assisted in his defense by the presiding judge and his acquittal had. And in support of this opinion we have the sworn testimony that Court Asher, a short time before the trial of his case, offered to bet and wager money that if he were tried in this court he would be acquitted.' "

Also the following:—" 'And we, the grand jury, do not believe that the presiding judge of our court should hand out such high-handed decisions. We believe that Court Asher was guilty of the crime charged against him in the indictment, and that, had the presiding judge

been fair and impartial in his rulings and dealings, and permitted the jury to have decided the case, a conviction would have been found.' "

Also the following:—" 'Members of this grand jury saw the presiding judge talk privately with Tom Miller, after he, Tom Miller, had been indicted for burglary by this grand jury, and we are appraised of the fact that the presiding judge, after learning that Tom Miller and Court Asher and Gene Williams had been indicted for burglary in an adjoining county, communicated with an officer of an adjoining county and requested that officer to be very easy on Court Asher, Tom Miller, and Gene Williams.' "

Also the following:—" 'For us to say that the good citizens of Delaware County have been outraged by such misconduct on the part of our presiding judge is putting it mild, and in behalf of the decent and respectable citizens of Delaware County who pay their taxes to maintain a court house and a court where justice should be meted out to lawless people, we the grand jury, make this request that the presiding judge, William A. Thompson, forthwith transmit his resignation as the judge of the Delaware Circuit Court to the Honorable James P. Goodrich, Governor of the State of Indiana, and that the same be effective at once. The presiding judge being declared the protector of criminals, has no right to sit upon the bench and further usurp the office of judge.' "

"That all of the above and foregoing paragraphs were contained and set out in said report when the same was so presented to said court for filing in said court.

"That said report was passed to the court at about dusk on Saturday December 19, 1920, and that the court did not see and know the contents of said report until after the said grand jurors had separated and gone to

their several homes, many of them far distant in the country, and now, on this the 20th day of December, 1920, and at the first opportunity the court now makes and enters the above and foregoing concerning the conduct of the said parties above named in and about the matters hereinbefore set out, and the court now orders and directs that a warrant issue for the arrest and production in open court in the said Delaware Circuit Court of the parties above named, at 2:00 o'clock P.M. on the 21st day of December, 1920, to make answer to and be held responsible by said court for and on account of said contemptuous conduct as hereinbefore set out and charged as having been done and performed by said parties. And this matter is now postponed and continued until said date in order to permit the sheriff to produce in court the above named parties."

At the time fixed in the warrant the sheriff produced the said members of said grand jury in court. Thereupon appellant presented to the court for filing, and offered to file, his verified application and affidavit for change of venue from the judge; and the court refused to note the filing of such verified application and affidavit, and refused to file the same, or permit the same to be filed as one of the papers in said cause. Thereupon appellant and his co-grand jurors presented to the court for filing, and offered to file, their separate and several motion to quash and set aside the writ; and the court refused to note on its minutes the filing of such motion, and refused to file such motion, or to permit it to be filed; and thereupon appellant, together with his co-grand jurors, offered to file their separate and several answer to the statement of the court theretofore entered of record; and the court refused to note the filing of said answer, and refused to file it, or permit it to be filed; to all of which rulings by the court appellant

at the time of such rulings, duly excepted. The court thereupon announced its finding, opinion, and judgment in writing; that each of said grand jurymen was guilty of contempt, and punishment by a fine for such contempt; to which finding and judgment appellant duly excepted; and thereupon appellant, with his co-grand jurors, filed their separate and several motion asking the court to reconsider its opinion and judgment, which motion was by the court overruled; and thereupon sixty days were granted said grand jurors to file any and all bills of exceptions; and each of said grand jurors prayed an appeal to this court, which appeal was perfected by but one of them, viz., this appellant.

The case comes to this court on appeal based on ten assignments of error, to-wit: (1) Refusing to note the finding, or to file application for change of venue from the judge; (2) refusing to note the filing of, to file, or allow to be filed a motion to quash and set aside the writ; (3) refusing to note the filing of, and to file the verified answer; (4) refusing to have noted upon the docket of the court the filing of the verified answer; (5) in rendering judgment; (6) in the opinion and judgment of the court; (7) overruling the motion to reconsider opinion and judgment; (8) overruling motion for a new trial; (9) for rendering judgment without arraignment, and without requesting appellant, or allowing him to make a statement in explanation, extenuation, or denial of the charge; (10) for refusing to allow appellant to make a statement in writing, which he offered in explanation, extenuation, and denial of the charge.

1. One charged with contempt of court is not entitled to a change of venue from the judge. *State* v. *Newton* (1878), 62 Ind. 517; *Merchants, etc., Co.* v. *Board* (1912), 201 Fed. 20, 20 C. C. A. 582; *Clymer* v. *Kennedy* (1894), 64 Conn. 310, 29 Atl.

539, 42 Am. St. 194; 13 C. J. 60, §83; *Lamberson* v. *Court,* 151 Cal. 458, 91 Pac. 100, 11 L. R. A. (N. S.) 619.

The writ sought to be quashed and set aside was not dependent on a statement which charged the contempt; hence it mattered not whether such statement

2. was made or filed prior to the issuing of the writ; not being dependent upon a charge or statement, it was not subject to the attack sought to have been made.

Appellant offered to file with the court his written statement, which he terms to be his answer in explanation, extenuation, and denial of the written

3. charge of contempt. This statement, instead of being an apology, or an expression of regret, or an explanation, extenuation, or denial of the written accusations of the judge of the court made by appellant and his co-grand jurors in their final report, is an argumentative discussion in favor of alleged conclusions of law, as to what are the rights of grand jurors in the premises; in which is set forth the whole of said final report, together with the statement that such charges were based, by the grand jury, upon evidence before the grand jury, which they (the grand jury) believed to be true when they presented their said report; and that they still believe the charges made against the judge and the court to be true; and that they had a right to make such charges; and that they were to be considered free from malice and wilful purpose to injure or interfere in any manner with the court in so doing.

The answer sought to have been filed by appellant, having included in it the whole of the report which contained the contemptuous language, the truth of which was by such answer reiterated, confirmed, and enlarged upon, together with the assertion that the grand jurors had the legal right to thus attack the judge, was in no

sense such a statement that could in any wise purge the jurors of the contempt charged; but if anything, it was a statement which made the action of the grand jurors more contemptuous than it otherwise would have been; and therefore the offer to file the same, and the filing thereof, was properly denied.

Under the fifth and sixth assignments of error, it is maintained that the actions and doings of the grand jury are privileged. The statutes of Indiana which define the duties of a grand jury are: the statute of the oath of grand jurors, in which is the following language, "You will diligently inquire and true presentment make of all felonies and misdemeanors committed or triable within this county of which you shall have or can obtain legal evidence," §1961 Burns 1914, Acts 1905 p. 584, §93; and the statute which sets forth the order of business of the grand jury, §1978 Burns 1914, Acts 1905 p. 584, §107; and the statute which requires the grand jury to examine the county jail, workhouses, and other public buildings in the county. In no place in any of these statutes which define the duties of the grand jury, is it contemplated that the grand jury shall charge any public officer with the commission of a felony by a so-called report. The statute requires the grand jurors to take an oath to make true presentment of all felonies and misdemeanors. Section 2041 Burns 1914, Acts 1905 p. 584, §170, prescribes the form of such a presentment and names it an indictment; and it will be noted that the language of the form of an indictment is that the grand jury "upon their oath do present." A presentment, as used in common law, as a written charge of the commission of a crime or misdemeanor, is unknown in the jurisprudence of the United States. The words "presentment" and "indictment" have been held to be used interchangeably, *People* v. *Flaherty* (1894), 79 Hun 48, 29 N. Y. Supp. 641, 642;

and such seems to have been the interpretation of the United States Constitution, Amendment 5, according to Mr. Justice Gray. *Ex parte Wilson* (1884), 114 U. S. 417, 5 Sup. Ct. 935, 29 L. Ed. 89. Appellant claims that while the grand jury acts in aid of the court, it is separable therefrom and is not answerable to it, and that all its doings are privileged. The duties of the grand jury in this state are governed by statute, and it has no rights or privileges based upon the common law. The statutes do not provide that the grand jury make reports to the court of crimes and misdemeanors of public officials, or of other citizens. It is, according to the oaths of its members, required to examine into all felonies and misdemeanors, and to make a true presentment in each of such cases, if in the opinion of the grand jury as defined by statute, such felony or misdemeanor has been committed; and this applies as well to a judge of a court as to any other public officer or private individual. That part of the final report of the grand jury as set forth in the written statement made by the judge, was not contemplated in law. If the grand jury, in making investigation of crimes and misdemeanors as set forth in the statute governing their order of business, conclude from the evidence taken, that a presentment in the form of an indictment should not be made against the person or persons under investigation for the commission of a felony or misdemeanor, it is not their duty or privilege, to make accusations in the form of a report, based on such evidence. There is no privilege, absolute or qualified, to commit contempt of court. *U. S.* v. *Craig* (1920), 266 Fed. 230, 233.

Appellant also maintains under his fifth and sixth assignments of error, that it is neither direct nor indirect contempt to criticize the court, either in writing or oral comment, by the use of

libelous or false statements which have reference to a matter that is no longer before the court. The truth of this contention applies only where the contempt charged is constructive. There are many cases of contempt reported in the opinions of the higher courts wherein libelous language was held not to be contemptuous when it had reference solely to a matter that had been fairly determined by the court, and was no longer before it for any purpose. *State* v. *Hildreth* (1909), 82 Vt. 382, 74 Atl. 71, 24 L. R. A. (N. S.) 551, 137 Am. St. 1022, 18 Ann. Cas. 661. But the case is different where an officer of the court, be he attorney, sheriff, clerk, or juryman, either in writing or orally, files or uses libelous, undignified, and scurrilous language; anything which brings the court into disrepute and lowers its dignity, whereby the due administration of justice is hindered and prevented. *Ex parte McLeod* (1903), 120 Fed. 130, 133. An open insult to the person of the judge while presiding is a direct contempt of court, in support of which statement it may well be said that courts of record of general jurisdiction always have power

7. to punish as for contempt their officers for offending the dignity of the court. *State* v. *Cockrel* (1919), 280 Mo. 269, 217 S. W. 524. Appellant, to confess and avoid the alleged contempt by his written answer, which he offered to file, and which offer was refused by the court, did not by such answer purge himself of contempt. As stated in an opinion by this court "for a direct contempt the offender may be punished instantly by arrest and fine or imprisonment up-

8. on no farther proof or examination than what is known to the judges by their senses of seeing, hearing, etc." *Ex parte Wright* (1879), 65 Ind. 504, 508; *Re Terry* (1888), 9 Sup. Ct. 77, 32 L. Ed. 405, 128 U. S. 289; *Re Robinson* (1874), 19 Wall. 513, 22 L. Ed. 205; *Lindsey* v. *People* (1919), 66 Colo. 343, 181

Pac. 531. The answer sought to justify appellant in the charges made by the report of the grand jury, by saying that by such report and the statements therein, no offense was intended to bring the court into disrepute. This statement as an extenuation might have had some standing according to the holding in 9. the case of *Fishback* v. *State* (1892), 130 Ind. 304, 30 N. E. 1088, wherein it was held that in order to constitute a contempt of court there must be some act coupled with an intended disrespect or defiance of the court; but it has since been held by this court that as to whether or not a contempt of court has been committed, it does not depend upon the alleged intention of the offending party, but on the act which he did. *Dodge* v. *State* (1895), 140 Ind. 284, 39 N. E. 745; *In re Chartz* (1905), 29 Nev. 110, 85 Pac. 352, 5 L. R. A. (N. S.) 916, 124 Am. St. 915; *State* v. *Shepard* (1903), 177 Mo. 205, 99 Am. St. 624, 76 S. W. 79; *Lewistein* v. *Du Pont, etc., Co.* (1919), 258 Fed. 662.

Appellant seeks further to purge himself of his contempt by asserting that if any action will lie against him it is libel; and that the judge against whom 10. the report was made ought to descend from the plane of his judicial office to the level of the appellant and attack him by a civil action. In the opinion of this court it would be a still greater humiliation of a court for the judge thereof to pass over the matter of contempt and come under the civil law to justify himself in damages for a libel. Such conduct would be personal; the court is impersonal. · *Ex parte McLeod, supra.* To such a point is the judicial status fixed in our jurisprudence that our courts and the judges thereof should be protected from the improper consequences of the discharge of duties, that such judicial officers have always been shielded on the highest consideration of the public good from being called in question in civil

actions for things done in the judicial capacity, even though the judge thereof performs such act corruptly. *Hamilton* v. *Williams* (1855), 26 Ala. 529; *Busteed* v. *Parsons* (1875), 54 Ala. 403, 25 Am. St. 688; *Ex parte McLeod, supra.* This judicial status is better stated by Chief Justice Kent in the memorable case of *Yates* v. *Lansing* (1810), 5 Johns. (N. Y.) 282, as follows: "Whenever we subject the established courts of the land to the degradation of private prosecution, we subdue their independence and destroy their authority. Instead of being venerable before the public, they become contemptuous and we therefore embolden the licentious to trample upon everything sacred in society, and to overturn those institutions which have hitherto been deemed the best guardians of civil liberty."

· This grand jury had the authority (five of them concurring), if the evidence taken by them was in their judgment sufficient to support a charge of· a commission of a crime, to "present" by "indictment," the judge of the court in question for his alleged conspiracy to thwart the ends of justice; and from the mere fact that they failed to "present" such an "indictment," it is an acknowledgment by them, in the face of their so-called report, that upon any investigation made by the grand jury, the evidence was insufficient upon which to base a charge for a felony or a misdemeanor against the judge. But instead, through whatever motive it matters not, this appellant, with the other members of the grand jury, filed the report in ·defamation of the judge, and as well of the court, which was composed of language that scandalized the court.· It is therefore a high contempt of court for the appellant to have sought to call to account the judge for his judicial acts, elsewhere than before a constituted tribunal for impeachment. It is quite natural that litigants take umbrage at the doings of the courts for the very reason that one

side or the other is always a losing party; not only against their hopes and desires, but even probably against their honest beliefs. Nevertheless such disappointed litigants ought not, and must not, be permitted to lower the dignity of our courts, either by personal violence, or by the use of open, violent, or scandalizing language to the judge in open court. In the early English practice indignities put upon the persons of judges when off the bench were punished summarily as contempts, for the reason that, as stated by Blackstone it "demonstrates a gross want of that regard and respect which, when courts of justice are deprived of their authority (so necessary to the good of the Kingdom) is entirely lost among the people." 4 Blackstone 485.

This document having been filed in open court, if contemptuous at all, was a direct contempt, notwithstanding the persons who presented it had gone to their homes and were absent from the court at the time its contents became known.

Appellant claims error for overruling of his motion for a new trial. The record fails to show that any motion for a new trial was offered, neither does appellant make any point in his brief under this alleged error.

Under the ninth error appellant complains that he was not arraigned by the court, and that he did not waive arraignment. It is no part of the procedure in a direct contempt of court that the one who is charged shall have the privilege of an arraignment. *Mahoney* v. *State* (1904), 33 Ind. App. 655, 72 N. E. 151, 104 Am. St. 276; *Neb., etc., Society* v. *State* (1899), 57 Neb. 765, 78 N. W. 267.

Criminal contempts of court embrace all acts committed against the majesty of the law or the dignity of the court, and the primary purpose of the punishment of such offenders is the vindication of

public authority, of which the court is the embodiment. As was well said by the Supreme Court of Colorado in the case of *People* v. *Green* (1883), 7 Colo. 237, 3 Pac. 65, 49 Am. Rep. 351: "A proper regard for the integrity of our honored profession" of the law and of the courts and their "judicial authority, requires that indignities * * * to judges, on account of rulings made in court, be summarily dealt with." Courts have criticized themselves and admonished each other in the careful use of this great power which they have had from time immemorial, in the use of this summary proceeding; which admonishment has called to the attention of the courts the discretion of power under actions of this kind; and that such discretion ought to be carefully weighed, to the end, that any judge may not in wrath pervert the courts inherent power to preserve their chaste character in the eyes of the people, for whose sole benefit the courts were organized. The exercise of this discretion is most aptly stated by Mr. Chief Justice Marshall in *Ex parte Burr* (1824), 9 Wheaton 529, 6 L. Ed. 152, in these words, "this discretion ought to be exercised with great moderation and judgment, but it must be exercised."

According to the published reports, it seems that there have been fewer cases in the United States of this character, wherein corruption and perversion of justice have been imputed to the judge directly and in open court, than for physical blows or chastisement by angered parties and witnesses; and it seems to be the greater weight of authority, that to impute corruption and perversion of justice to a judge is attended by more mischievous consequences than a blow. *King* v. *Almon* (1765), Wilmot's Notes 243; *Queen* v. *Gray* (1900), 2 L. R. Q. B. 36; *Commonwealth* v. *Dandridge* (1824), 2 Va. Cas. 408; *Burdett's Case* (1904), 103 Va. 838, 68 L. R. A. 251, 106 Am. St. 916, 48 S. E. 878; *State* v. *Morrill*

NOVEMBER TERM, 1921. 595

Massachusetts, etc., Ins. Co. *v.* State, ex rel.—191 Ind. 595.

(1855), 16 Ark. 384; *State* v. *Shepherd, supra; U. S., ex rel.* v. *Gehr* (1902), 116 Fed. 520; *Re Chadwick* (1896), 109 Mich. 588, 67 N. W. 1071.

There was no error in overruling the motion to reconsider the opinion and judgment of the court.

Judgment affirmed.