150 So.2d 231 (1963)
STATE of Florida et al., Petitioners,
v.
Alex CLEMMONS et al., Respondents.
No. 31819.
Supreme Court of Florida.
February 20, 1963.
*232 Richard W. Ervin, Atty. Gen., and Reeves Bowen, Asst. Atty. Gen., for petitioners.
Gillis E. Powell, Crestview and A.G. Campbell, Jr., DeFuniak Springs, for respondents.
THORNAL, Justice.
By petition for certiorari we have for review a decision of the District Court of Appeal, First District, which has been certified to us as passing "upon a question * * * of great public interest." Article V, Section 4, Florida Constitution, F.S.A.; Susco Car Rental System v. Leonard, Fla., 112 So.2d 832.
We must consider the authority of a circuit judge to adjudge a contempt penalty against a grand jury and whether the report of the grand jury in the instant case was contemptuous.
The facts which produced the present problem are adequately delineated in the decision of the District Court which has been submitted for review. Clemmons v. State, Fla.App., 141 So.2d 749. Honorable *233 Ernest E. Mason impaneled a grand jury during the spring term of the Circuit Court in Okaloosa County. He was one of the six Circuit Judges of the First Judicial Circuit. The grand jury, by its interim report, recommended that an attorney closely associated by blood or marriage to a member of the judiciary refrain from practicing before his kin. The complete report is quoted in Clemmons v. State, supra. Thereupon, Honorable Charles A. Wade, another of the Circuit Judges of the First Judicial Circuit, recalled the grand jury from recess, read the report to the members in open court, and peremptorily adjudged them to be in contempt of court. He struck the report from the records of the court. Judge Wade was offended by the report because he is a nephew of Honorable Purl G. Adams, a lawyer practicing in Okaloosa County. At the time, Mr. Adams was counsel in cases pending in the circuit court over which his nephew and former law partner presided. Deeming the report to be a reflection on the integrity of the court, Judge Wade concluded that it was leveled at him personally because of his relationship to a member of the Bar in his circuit. With no more than a pro forma hearing the grand jury was adjudged to be in contempt. On appeal the District Court unanimously concluded that the report was not contemptuous. The majority of the District Court also concluded that a circuit judge has no power to adjudge a grand jury in contempt because of the contents of its report. A dissenting judge expressed the view that under some circumstances a grand jury report could be contemptuous and that in such cases the presiding judge has the power to assess a contempt penalty against the jury. It is this decision of the District Court which has been certified to us as passing upon a question of great public interest.
The power of a circuit court to cite an entire grand jury for contempt was not raised by the parties in the District Court. Nevertheless, that court considered this question to be critical to its inquiry. In view of the ultimate conclusion reached by the District Court we do not agree that it was essential to consider the question of the basic power of the circuit judge to adjudicate the contempt. This is so because of the conclusion that the report was not contemptuous. In the light of this conclusion a reversal was required regardless of the existence of the power. Inasmuch as the point was so strongly made by the District Court, we deem it appropriate to consider the problem because of the importance of the decision which otherwise might be accepted as precedent on the subject. Carraway v. Revell, Fla., 116 So.2d 16.
By a very informative opinion the majority of the District Court summarized the history of the grand jury system. Those judges felt that under no circumstances does a presiding judge have the power to hold in contempt an entire grand jury because of the contents of its report. The dissenting judge had the view that despite the broad sweep permitted a grand jury in the exercise of its inquisitorial power, there could be circumstances where its report would contain language that would support a contempt charge.
Literally, miles of print have been devoted to discussions of the grand jury system and the important place which it occupies in our jurisprudence. One of the best discussions of the subject which has come to our attention is, The Grand Jury "Presentment": Foul Blow or Fair Play?, by Richard H. Kuh, Columbia Law Review, Vol. 55, p. 1103. This Court on numerous occasions had made its own contributions. In Re: Report of Grand Jury, 152 Fla. 154, 11 So.2d 316; Owens v. State, Fla., 59 So.2d 254; Ryon v. Shaw, Fla., 77 So.2d 455, 48 A.L.R. 2d 713; State ex rel. Brautigam v. Interim Report of Grand Jury, Fla., 93 So.2d 99. Anything we might now add would be surplusage. Some states have abolished the grand jury entirely. Suffice it to note that in states such as Florida, where the grand jury is preserved, it is an important appendage of the court which impanels it. At the same time it should not be forgotten that the judge of that court is equally important *234 and he is generally charged with the supervision of the grand jury's activities. Sections 905.08, 905.09, 905.11 and 905.18, Florida Statutes, F.S.A.; Section 10, Declaration of Rights, Florida Constitution, F.S.A. It is, therefore, of vital importance to maintain the dignity and the integrity of both the grand jury and the presiding judge.
We have held that the grand jury has extensive inquisitorial powers which include the authority to bring to the attention of the court and public, undesirable conditions which they find to exist and which require remedy. The grand jury is not authorized to investigate the private affairs of individuals and it should not single out public officials for scurrilous condemnation without accompanying indictment. Grand jurors may make a fair report of their findings even though it incidentally reflects adversely upon a public official responsible for the condition. State v. Interim Report of Grand Jury, supra. A grand jury should not defame an official merely for the sake of defamation. It should not excoriate and scurrilously defame a judicial officer who is an essential component of our system for administering justice any more than should a judge excoriate and defame or contemptuously treat grand jurors who are engaged in the conscientious performance of their duties. Such conduct by either reflects adversely on the sanctity of the whole judicial process. We interpolate that the instant record does not support the slightest suggestion of any such conduct or intention by the judge or the grand jury. The measure of the conduct of each toward the other is truth, dignity, fair-play, common sense and mutual respect. When these limits are exceeded then it is appropriate that corrective measures be taken in the orderly course of the administration of justice.
To this end, we do not agree that a grand jury is an autonomous agency with unlimited power. It is subject to reasonable corrective measures when it transcends bounds of law and reason. Conceivably, a grand jury report could be so salacious or scurrilous or defamatory or so lacking in truth as to indicate a malicious exploitation of authority. When this is apparent punishment for contempt might be justified. Indeed the Florida Legislature has by statute announced two situations in which grand jurors and, conceivably, an entire grand jury may be adjudged guilty of contempt. See Section 905.17 and Section 905.27, Florida Statutes, F.S.A. The paucity of precedent on this subject indicates the rarity of situations which have appeared to justify the extreme action evidenced by a judgment of contempt for criticism of a judge. Indeed, the only case revealed by research of counsel and our own research is Coons v. State, 191 Ind. 580, 134 N.E. 194, 20 A.L.R. 900. This leads us to conclude that conceivably a grand jury's report could be of such nature as to justify a contempt citation directed to the entire jury. The fact remains that broad latitude is allowed the grand jury. The power to find a grand jury in contempt because of the contents of its report should be exercised with great caution and only in extreme cases. The rule is that the power to adjudge anyone in contempt is always to be exercised with care and circumspection. South Dade Farms v. Peters, Fla., 88 So.2d 891. Ordinarily, expunging the report from the court records should suffice to remedy the evil of an obnoxious and objectionable report. For a helpful discussion of Florida grand jury powers see, Grand Jury presentments: Protection of the Vindicated, by J. Robert McClure, Jr., University of Florida Law Review, Vol. XII p. 330.
Our examination of the report in the instant case impels us to agree with the District Court regarding the nature of the report. It was totally lacking in any contemptuous element. The report was not leveled at any individual. It applied to all lawyers practicing before any judge closely related by blood or marriage. We know that there are six circuit judges in the First *235 Circuit. The report would apply to any of their kin who happen to be lawyers. Although Judge Wade deemed himself offended, the report was not specifically directed at him. It was a respectful and respectable statement of a condition which the grand jurors felt justified comment. They offered their comment in a dignified fashion. Instead of castigating a court or a particular judge the grand jury here indicated its respect for the courts, all judges and for the judicial system.
It merely recommended a course of conduct to members of the Bar as officers of the court. Actually, the report was couched in language directed to the preservation of the integrity of the judicial system with the objective of preventing embarrassment to the courts.
This grand jury report did little more than the Legislature itself has done by the enactment of Section 38.02, Florida Statutes, F.S.A. By the cited statute relationship between judge and lawyer within the third degree is made an absolute disqualification of the judge when asserted by a litigant. Implicit in the statute is the suggestion that a close kinship between a judge and a lawyer practicing before him has potentials for reflecting adversely on the impartiality of the system. See Code of Ethics Governing Judges, Rule A, Canon 13, 31 F.S.A. The subject report of the grand jury merely recommended that closely related lawyers refrain from participating in litigation before their kinfolks, thereby relieving litigants of the possible embarrassment of having to ask a judge to disqualify himself, a procedure which, at best, is delicate even though the litigant often feels that it should be made.
We find nothing contemptuous in the report of the grand jury here under review. The District Court ruled correctly in reversing the contempt order.
Except to the extent that it is modified by our observations regarding the power of a circuit judge to find a grand jury in contempt, the decision of the District Court is approved. The writ of certiorari is denied.
It is so ordered.
ROBERTS, C.J., and TERRELL, THOMAS and DREW, JJ., concur.