DREW, Justice.
This is an appeal from a judgment on pleadings entered in a taxpayer’s suit instituted by appellant seeking an accounting of funds spent by the 1966 Dade County Grand Jury, and upon cross-claim by the defendant county commissioners and state’s attorney asking declaration of their powers and duties in relation to the 1967 Grand Jury then impanelled.
Direct review by this Court[1] is predicated on the trial court’s declaration that Chapter 57-870, Laws of Florida, is “void and unconstitutional because enacted at a time when it was beyond the power of the Legislature to enact a statute applicable solely to Dade County” under Article VIII, Sec. II,[2] of the Florida Constitution.
On the basis of other conceded facts, i. e. that the cited statute was enacted prior to adoption of the home rule charter [3] authorized by the ' Constitution, we think the court in this case erred in finding the act violative of the constitutional proscription, which is clearly contingent on implementation by adoption of the charter. Our determination on this point, however, does not dispose of the real issues in this litigation, since neither Ch. 57-870 nor the predecessor statute applied by the trial court, Chapter 25765, Laws of Florida, Acts of 1949, is explicit on the primary point decided below. The court held that appropriations from the Special Grand Jury Fund are entirely and permanently insulated from public scrutiny, and that the Grand Jury’s expenditures from that fund “are wholly cloaked in secrecy, and it need not explain any proposed expenditures on the vouchers submitted to the Clerk of the Circuit Court nor have any portion of the Special Grand Jury Fund rendered subject to public auditor accounting.” [4]
*572 It is apparent that the court in this case did not rely on any inherent necessity for secrecy in grand jury proceedings when it held expenditures from the spe *573 cial grand jury fund to be exempt from public accounting procedures which it found to be applicable to other funds appropriated for grand jury use. The sole *574 ground for the court’s conclusion is the following provision contained in both acts relative to this fund:
“The monies in the ‘special grand jury fund’ provided by this act shall be payable to the grand jury, or their order, upon a voucher signed by a member of the grand jury, designated as Treasurer of the grand jury, for that purpose being presented to the clerk of the circuit court.” [5]
We are unable to agree with the judgment below that this language “specifically insulates [such expenditures] from public scrutiny” or that it provides “no voucher submitted need state * * * the purpose for which the amount is being drawn.” That conclusion is, in our opinion, in clear derogation of the statutory requirement, recognized by the court, that such funds shall be used only for the purpose of investigating crime and incidental defined purposes. This requirement is plainly stated as a limitation on the jury’s discretion in making expenditures, which discretion the decision below would render absolute and quite independent of the legislative restraint. The prescribed mechanics for such expenditure, otherwise accurately delineated by the court, provide no reasonable basis for rejection of the petitioner’s complaint. Nor can we agree with the rule of convenience by which the 1966 Spring Term Grand Jury was dismissed as a party defendant. Discharge of the jury does, of course, terminate the body as a functioning entity for many purposes, but we find no precedent for the proposition that dispersion of the jury terminates the necessity for response in litigation of this nature.[6]
We find no merit to other points raised in this appeal. Our conclusions on the issues discussed do not dictate the precise measure of relief to be granted on the complaint in this cause, or foreclose exercise of the discretion with which the trial court is vested in the control and conduct of grand jury procedures generally.[7] Except as hereinabove stated, the judgment should be affirmed and the cause remanded for further proceedings in compliance with this opinion. In consideration of the cause upon remand, the chancellor may make appropriate provision for the protection of the secrecy of expenditures made essentially covert by virtue of the nature of the service rendered, such as for example, to secret informers.
It is so ordered.
CALDWELL, C. J., THOMAS, THOR-NAL, ERVIN and ADAMS, JJ., and Mc-CORD, Circuit Judge, concur.

. Review by direct appeal is pursuant to provisions of Art. V, Sec. 4, Fla.Const., F.S.A.

. “ * * * The electors of Dade County, Florida, are granted power to adopt * * * a home rule charter * * * [which] May grant full power and authority to the Board of County Commissioners of Dade County to pass ordinances relating to the affairs, property and government of Dade County * * *. Nothing in this section shall be construed to limit or restrict the power of the Legislature to enact general laxos xohich shall x-elate to Dade County and any other one or more counties * * [Effective November 6, 1956.] [e. s.]

. Chapter 57-870, a population act initially applicable only to Dade County, became a law on June 29, 1957. The Dade County Home Rule Charter was adopted by referendum vote effective July 21, 1957. For other decisions involving 1957 legislative enactments applicable to Dado County see Yoo Kun Wlia v. Kelly, Fla. 1963, 154 So.2d 161; State ex rel. Worthington v. Cannon, Fla. 1965, 181 So.2d 346.

.The decree states:
“It appears to the Court that the essential legislative purpose manifested in the foregoing statutory language is to require the Board of County Commissioners of Dade County to appropriate $30,000 annually from the County’s fine and forfeiture fund into the Special Grand Jury Fund thereby created. Although the statute is silent on the point, a logical interpretation would require that the $30,000 be divided equally between the two Grand Juries that sit during each fiscal year. This sum is to enable *572 tlie Grand Jury to perform its investigative functions, or a portion of them, through a special fund that will enable it to operate with the traditional secrecy that Grand Jury proceedings have had for centuries. The money appropriated to the Special Grand Jury Fund is to be drawn by the Grand Jury and submitted to the Clerk of the Circuit Court from time to time. No voucher is required to designate the recipient of the money or the specific or particular purpose for which that recipient is being paid. Section 4 of the statute can have no other purpose than to enable the Grand Jury to draw a cloak of secrecy over those matters which it may, in its discretion, investigate with secrecy.
The plaintiff argues that the sum fixed in the statute, whether the 1949 or the 1957 statute, is the minimum amount that the Board of County Commissioners may appropriate for the investigative purposes of the Grand Jury as well as the maximum amount that may be appropriated to the Special Grand Jury Fund for use by the Grand Jury in investigating matters with complete secrecy. The court accepts the plaintiff’s interpretation of the statute and accordingly holds that the Board of County Commissioners of Dade County must appropriate $15,000 to the Special Grand Jury Fund for each of the two Grand Juries that sits each year. This money is to be drawn on vouchers submitted by the Treasurer of the Grand Jury to the Clerk of the Circuit Court. No voucher submitted need state the name of the recipient of the sum designated in the voucher nor the purpose for which the amount is being drawn with any more particularity than the Grand Jury wishes to give. The function of the Clerk of the Court is wholly ministerial, and he may not withhold any sum requested in a Grand Jury voucher drawn on the Special Grand Jury Fund. The funds drawn by the Grand Jury from the Special Grand Jury Fund are therefore not subject to any public explanation beyond what the Grand Jury chooses to give, nor public accounting, nor audit by the State Auditor or the County’s Internal or External Auditor. The Grand Jury may not expend any moneys drawn from the Special Grand Jury Fund for any purpose not falling within the ambit of Section 3 of the statute; however, its expenditures are wholly cloaked in secrecy, and it need not explain any proposed expenditures on the vouchers submitted to the Clerk of the Circuit Court nor have any portion of the Special Grand Jury Fund rendered subject to public audit or accounting.
3. Nothing in the 1949 statute recited above restricts the power of the Board of County Commissioners of Dade County to appropriate additional sums for Grand Jury purposes over and beyond those appropriated to the Special Grand Jury Fund. The aforesaid County Commission may appropriate or grant such further funds to the Grand Jury as it deems wise within the limits prescribed by Chapter 142, Florida Statutes. The additional sum appropriated by the Board of County Commissioners of Dade County for the 1966 Spring Term Grand Jury was therefore proper and lawful. However, such additional amounts as the County Commission may appropriate for Grand Jury purposes may not go to the Grand Jury through the conduit of the Special Grand Jury Fund which is limited to $15,000 per Grand Jury. Therefore such additional amounts as the Board of County Commissioners of Dade County makes available to the Grand Jury are subject to the requirements that all public moneys are subject to, namely, designation of recipient, explanation of the purpose of the expenditure, public accounting, and subsequent audit by State and County sources. The public’s right to know how its taxed funds are being expended is implemented and emphasized by Article III, Section 19 of the Constitution of Florida, by various provisions contained in Chapters 21, 128, 129 and 142, Florida Statutes, and by Section 125.11, Florida Statutes. Absent a statute like Chapter 25765, Laws of Florida, 1949, which specifically insulates the first $30,000 appropriated each year for Grand Jury purposes from public scrutiny, all funds appropriated for Grand Jury purposes by the Board of County Commissioners of Dade County shall be treated as public moneys and subjected to the severe scrutiny which public moneys are and should be required to be subject to.
4. An issue raised in the pleadings is directed to whether an Assistant State Attorney assigned to duty with a Grand Jury may also serve simultaneously as an independent special counsel for the Grand Jury and be paid from the Special Grand Jury Fund created by the aforesaid 1949 statute. The Court holds that such a dual or hybrid role for an Assistant State Attorney is neither contemplated *573 nor permissible under the laws of Florida. The Court looks upon the Assistant State Attorney serving with a Grand Jury as a member of the State Attorney’s staff and therefore not permitted to serve in any other official capacity or role. He must therefore receive his salary or remuneration from the funds allocated to the Office of the State Attorney, and not from the Special Grand Jury Fund.
The Court therefore declares that the Assistant State Attorney may not receive his salary or remuneration from any source other than the State Attorney. However, it also appears to the Court that he may lawfully receive all or some portion of the expenses ho incurs during service with the Grand Jury from the Special Grand Jury Fund provided such expenses are incurred for and on behalf of the Grand Jury, are made pursuant to the Grand Jury’s instructions, and fall clearly within the ambit of the Grand Jury purposes listed in Section 3 of the governing 1949 statute.
6. Having defined the powers and duties of the cross-claimants and defendants while making this judicial declaration based on the issues raised in the cross-claim and the answer thereto, the Court has dealt with and determined most of the issues raised in the plaintiff’s amended complaint and the responses thereto. The Court’s judicial declaration on the cross-claim indicates that the conduct of all defendants has been consistent and in accord with this declaration except in three possible areas. The first area relates to the lack of an accounting by the 1966 Spring Term Grand Jury of its expenditure of funds from sources other than the Special Grand Jury Fund. The second area involves the alleged payment of some or all of the salary of the Assistant State attorney serving with the 1966 Spring Term Grand Jury from the Special Grand Jury Fund. The third area is concerned with the allegation that the 1966 Spring Term Grand Jury “utilized large portions of the sums thus provided for them for extravagant social activities, including parties, purchase of foods, liquors and other related items, etc.”
With regard to the first area relating to a possible lack of accounting by the 1966 Spring Term Grand Jury of its expenditure of public funds drawn from sources other than the Special Grand Jury Fund, the Court herewith dismisses that portion of the plaintiff’s amended complaint which seeks such an accounting. The Court does not believe that any worthwhile purpose would be served by requiring an accounting now of the expenditures made by any past Grand Jury. Members of these Grand Jurioi may no longer be within the jurisdiction, and if here, it is doubtful that they could still reconstruct or provide the detailed accounting required by this declaration. Furthermore, absent this declaration there were no clear guidelines relating to a subsequent compulsory accounting for public moneys expended by Grand Juries who might well have assumed that the traditional secrecy surrounding Grand Jury activities made neither accounting nor disclosure of any of its expenditures necessary. Thus, there was no reason for the 1966 Spring Term Grand Jury to believe that it would be required to give a detailed accounting of any portion of its expenditures and accordingly keep detailed financial records of the sums expended.
The Court also dismisses that portion of the amended complaint which alleges that the Assistant State Attorney serving with the 1966 Spring Term Grand Jury received all or some of his salaried compensation from the Special Grand Jury Fund. In the Court’s opinion it would be inequitable to require such Assistant State Attorney to return any portion of his salary because it was drawn from the Special Grand Jury Fund rather than the State Attorney’s budget. His salary was paid to him under visible color of law (Sections 3 and 2 of the 1949 and 1957 statutes respectively), he had no reason to believe that the salary payment came from the wrong budgetary compartment (assuming that it did), and the Clerk of the Circuit Court in and for Dade County, having only a ministerial function, liad no authority to decline any Grand Jury vouchers submitted by the treasurer of the Grand Jury requesting moneys appropriated for Grand Jury purposes. Furthermore, since both the salary of the Assistant State Attorney and moneys flowing into the Special Grand Jury Fund come originally from the County’s fine and forfeiture fund, it would be a pure exercise in mechanical bookkeeping for the Court to require the aforesaid Assistant State Attorney to return his salary to the Special Grand Jury Fund, and to require the State Attorney to compensate him to the same ex *574 tent from moneys in the State Attorney’s budget at this time.
The sole issue remaining therefore goes to the allegation that the 1966 Spring Term Grand Jury “utilized large portions of the sums thus provided for them for extravagant social activities, including parties, purchase of foods, liquors and other related items etc.” The 1966 Spring Term Grand Jury ceased to exist as a functioning entity approximately seven months before this suit was commenced and is therefore not a proper party to this suit. The Court therefore dismissed the amended complaint as to the 1966 Spring Term Grand Jury.
DONE and ORDERED in Chambers at the Dade County Courthouse Miami, Florida this 29th day of June, 1967.”

. Section 3, Chapter 57-870.

. See Rosenhouse v. 1950 Spring Term Grand Jury, In and For Dade County, Fla.1952, 56 So.2d 445.

. Cf. Clemmons v. State, Fla.App.1962, 141 So.2d 749, 150 So.2d 231; Gordon v. State, Fla.1958, 104 So.2d 524.