## In re DADE COUNTY GRAND JURY.

Circuit Court, Dade County.
July 24, 1956.

Richard H. Hunt, Miami, for petitioner.

H. Gunter Stephenson, Winter Haven, acting state attorney for 11th judicial circuit, for the state.

Walter E. Dence, Miami, amicus curiae, at request of Dade County Grand Jury Association.

ROBERT L. FLOYD, Circuit Judge.

By motion filed May 10, 1956, John W. Wright, a member of the bar, moved to expunge certain portions of the reports filed April 30, 1956 and May 8, 1956, as they related to him. Arguments of counsel for the petitioner and the state (represented by the Honorable Gunter Stephenson, acting state attorney for this circuit) were heard in chambers on June 22, 1956, the brief of petitioner

considered, and the matter additionally researched by the court, and the court being fully advised in the premises, the following opinion and order is rendered —

The grand jury rendered two reports—one, an interim report on April 30, 1956, and the other, a final report, on May 8, 1956. The former dealt exclusively with the alleged activities of two circuit judges of this circuit, and two members of the bar of this court, in the administration of a curatorship now known as "the Dowling case." The latter made reference to this case only in "Amended Recommendations" which the grand jury substituted for the "Recommendations" in the interim report. About the only change in the amended recommendations from the original is that the grand jury

"finds" that the two lawyers are unfit to practice law in the original, whereas in the amended the grand jury "feels" that they are unfit. In addition, the original did not mention that the two circuit judges should be impeached, whereas the amended recommendations so found, and the legislature was urged to act accordingly.

This motion concerns itself exclusively with John W. Wright, one of the lawyers "found" or "felt" to be unfit to practice law because of his activities as guardian ad litem in the curatorship of Mrs. Dowling.

Paragraphs 2 and 3 of the motion set forth the only mention of the petitioner contained in the two reports, and will not be set forth again herein. Reference may be made to the motion and the reports.

The court is of the opinion that the motion may be disposed of from a careful reading of the reports themselves, and is not concerned with the motives of anyone. The court assumes that the grand jury means what it says in the reports, and the manner or methods used in arriving at the conclusions of the reports, the investigative techniques used, the relationship between the parties involved and certain members of the grand jury or counsel, are all of no moment to this court for the purposes of this opinion.

That there are two separate and distinct views regarding the scope and extent of grand jury reports in this country cannot be seriously doubted. The majority view is the more strict and limits the grand jury to either an indictment or silence. The minority view permits findings pertaining to governmental affairs, and rec-

ties.

ommendations for correction where deemed advisable. Florida follows the minority view, In re Report of Grand Jury, 11 So. 2d 316; Owens v. State, 59 So. 2d 254, cited with approval in Ryon v. Shaw, 77 So. 2d 455 [6 Fla. Supp. 83]; also see case note, 6 University of Florida Law Review 140.

In the above cited cases, it will be noted that grand juries in this state have unlimited power to investigate so long as their investigation is directed "to detecting unlawful offenses." It necessarily follows that the power is unlimited since it is not often, at the beginning of an investigation, that an unlawful offense can be detected. But this, nonetheless, cannot restrict investigative activities of the grand jury.

The paramount question may be stated as follows—After the investigation has been completed, or at least carried on as far as the grand jury is capable without the detection of an unlawful offense so as to warrant an indictment, what then becomes of the mass of information compiled by the grand jury? Must it file it away in the archives, or may it write a report to the public for whom it is guardian "of all that is comprehended in the police power of the state?"

The answer to the question, in Florida and other states following the minority view, is that it may write a "fair" report. The word "fair" is a very relative term, and there is no precise definition which may be applied to each case and in every instance.

I am of the opinion, however, that a rule of thumb to be applied as nearly as possible in cases of this kind is—*Where there is no indictment and the principals must answer only in the forum of public opinion, the report must set forth in terms specific enough to be categorically answered by the principals those matters and things for which they are condemned.* This, at least, would give the principals involved the opportunity to answer in the same forum chosen by the grand jury, i.e., public opinion.

It seems to me that the word "fair" would be meaningless, indeed, unless complemented by the above rule of thumb.

Applying the above to the petitioner, how do the reports meet this test? A careful reading of the reports will answer this. Wright is not mentioned until page 9 of the first report. Up to that time,

Judges Holt and Prunty and Mr. Heller are involved in the alleged maladministration of the curatorship, together with various and sundry attorneys, the receiver, CPA and doctors, who were awarded fees prior to Wright's entry into the matter at all. The only mention of Wright on page 9 is that he was appointed guardian ad litem for Mrs. Dowling.

On page 10 it is stated that the judge (Holt) in his order gave Wright *additional* powers—even though the statute limits the powers of a guardian ad litem. If this is wrong, it would seem that the only guilt on the part of Wright was that he accepted appointment under an invalid order by the judge.

The following pages continue with many alleged derelictions by the judges and Mr. Heller in disposing of assets unnecessarily,

awarding fees to the curators and a contempt hearing of a "visitor from Massachusetts."

Wright is mentioned twice on page 15. The report on that page starts with an assumption of guilt as follows—"In order to make it appear as if the curatorship of Mrs. Dowling involved an adversary or contested proceeding, Judge Holt had appointed attorney John W. Wright guardian ad litem." It continues that "he went through the motions of filing pleadings and opposing the appointment of a curator." Then are set forth various fees awarded to Wright by the court.

On page 16, the report sets forth that Wright filed objections to the proposed purchase by the curators of a $6,000 Cadillac for the convenience of the Dowlings. And then, it continues, not with

a charge against Wright, but with a charge against Judge Holt and the curators, by alleging that they were the ones who created "scenery" which made Wright's "alleged protest" useless. Continuing on page 16, the report recites that Wright filed a number of "pleadings" objecting to and attacking a report and petition of the curators, which apparently met with success, because, the report says, Judge Holt entered an order adverse to the curators' petition and in favor of Wright's position. Then, again on page 16, the last paragraph concludes with complimentary language for Wright thanking him for his "timely objections."

Wright is not mentioned again until page 19, whereon it is stated that he was appointed guardian ad litem a third time, but that the guardianship proceedings were completed a month before the

appointment. This was subsequent to June 27, 1955. It will be noted that on page 15 of the report the last fee Wright was awarded was on June 7, 1955. The report does not, therefore, show whether Wright accepted the last appointment, was awarded any fee under it, or, as a matter of fact, whether he ever knew about it.

On page 21, Wright's total fee is set out, together with many other expenditures.

Then, under "Recommendations" on page 23, Wright is "felt" to be unfit to practice law, and the board of governors of the Florida Bar are called upon to take appropriate action.

Do the foregoing reports meet the test of specificity by charging sufficiently so that Wright can answer in the forum of public

opinion? I am of the opinion that they fall far short of meeting this test. I have read and re-read the reports and giving the benefit of every favorable construction placed upon them, and without taking them out of context, I cannot but conclude that there is nothing set forth within the four corners of the reports that charges Wright with anything which would support the most serious of all charges against a lawyer—that he is unfit to practice law and should be disbarred.

The narrative findings of the grand jury are not serious in and of themselves. These are set forth as the grand jury saw them. But the recommendation that Wright is unfit to practice law cannot be supported by the narration of his part in the administration of the estate. If the grand jury felt that he was guilty of a conspiracy with the court, then it should have so found; if the grand jury felt that from the evidence adduced before it that Wright's pleadings and objections were in fact prepared by someone other than himself, and that he was merely a tool allowing himself to be used by designing persons, then it should have so found, and set forth the specifics for its finding; if the grand jury had reason to believe that Wright was sharing his fees with others against the law, then it should have so found, and set forth the grounds for this belief.

But how a lawyer can answer the nebulous charge of filing "alleged protests," or of being appointed guardian a third time after the guardianship proceeding had terminated (without his knowledge) or of "going through the motions of filing pleadings," on the one hand, and then finding in the same report complimentary language lauding him for his "timely objections," on the other, is more than I can comprehend. If Wright is guilty of conduct which would render him unfit to practice law and should be disbarred, it certainly does not appear in these reports. This court takes judicial notice of the thorough and complete investigation presently being conducted by the Florida Bar, and this opinion and order is not meant in the slightest as a deterrent to that investigation. But this does not enlarge the scope of a grand jury report. The rule is the same.

Strangely enough, in the jury's summary of the charges involved, beginning on page 21 of the first report, *Wright is not even mentioned—by name or by inference.* It would seem that when summarizing the story of alleged maladministration, and devoting a page and a half to it, that certainly all those guilty of acts as serious as alleged here, would, at least, be mentioned. This skips Wright entirely and then goes on in the next paragraph and recommends disbarment.

Under "Recommendations" on page 23 of the first report, and page 1 of the amended report, there are four reasons set forth why the grand jury concludes that Wright is unfit. These are— (1) In view of the disregard of the law. (2) In view of the squandering of assets of an estate and the allowance of exorbitant fees. (3) In view of the connivance of the court and its appointees. (4) And in view of conduct unbecoming judges and members of the Dade County Bar.

The report fails to set forth factual matter to support the charge that Wright disregarded the law. It fails to show, by factual allegations which can be answered, that Wright squandered assets of the estate. It fails to show, by factual allegations, that Wright connived with the court in a manner that is capable of being answered. And lastly, the fourth contention upon which the recommendation is based is obviously a conclusion which does nothing but reiterate the ultimate recommendation in the first place.

With regard to the prayer of the petitioner that all reference made to him in the reports be expunged, there is a practical problem involved. Several of the references recite only factual matter, such as his appointment, fees awarded, pleadings filed, and even

complimentary remarks concerning his handling of his duties. Therefore, it would be improper to expunge these from the record. Accordingly, the only portion of the reports ordered expunged will be the parts "finding" and "feeling" that Wright is unfit to practice law and to perform the functions of an officer of the court.

It is, therefore, ordered, adjudged and decreed that so much of the reports of the grand jury filed April 30, 1956 and May 8, 1956, finding that John W. Wright is unfit to practice law and to perform the functions of an officer of the court, be, and the same is, hereby expunged from the public records and from the minutes of this court.