93 So.2d 99 (1957)
STATE of Florida ex rel. George A. BRAUTIGAM, State Attorney, Eleventh Judicial Circuit of Florida, Appellant,
v.
INTERIM REPORT OF GRAND JURY Recommending Resignation of Judges and Disbarment of Attorneys Implicated in the Dowling Estate Curators Case, Dated April 26, A.D. 1956 of the Dade County Grand Jury, Fall Term, 1955, Appellee.
Supreme Court of Florida, En Banc.
February 27, 1957.
*100 George A. Brautigam, Paul A. Louis, Max B. Kogen, Thomas N. Balikes, William A. Meadows, Jr., and Donald G. MacKenzie, Miami, for appellant.
Richard W. Ervin, Atty. Gen., and Reeves Bowen, Asst. Atty. Gen., for appellee.
PER CURIAM.
We here review the action of an assigned circuit judge in refusing to suppress portions of an interim report of the Dade County grand jury filed April 30, 1956, just eight days prior to the filing of its final report. The motion to suppress was made by the State Attorney, who was not named in the interim report nor consulted as to the propriety of its filing.
The portion of the interim report sought to be suppressed dealt with the actions and conduct of a circuit judge and three attorneys appointed by him in the handling of the estate of an incompetent  two as curators and one as guardian ad litem. It might be noted that, although the allowance of fees and approval of the curators' administration by the trial judge involved the exercise of his judicial discretion, no interested party has complained, on appeal, that he abused his discretion. It is also noteworthy that one of the curators had, at the time of the investigation, been appointed a circuit judge and has since, in November 1956, been elected by the people to perform the duties of the office after a full public disclosure of the charges made in the report.
In addition to a factual account of the administration of the incompetent's estate, the report contained the jurors' own personal interpretation of the facts and their *101 views as to the underlying motives of the principals in pursuing the course of conduct detailed in the report. Almost all of their remarks in this respect were derogatory and defamatory. The over-all tone of the report is exemplified by the following excerpt from their "summary":
"As the story unfolded it showed what happens to helpless old people who seek the protection of Judge ____'s Court `against designing persons'  wanton disregard of the law, and the stripping of the estate of a helpless old man of vast sums of money."
The jurors concluded that "[i]n view of the disregard of the law, in view of the squandering of assets of an estate and the allowance of exorbitant fees, in view of the connivance of the Court and its appointees, and in view of conduct unbecoming Judges and members of the Dade County Bar," the circuit judges in question were "unfit to serve and should resign from office" and the lawyers in question were "unfit to practice law and to perform the functions of officers of the court." They called upon the Board of Governors of The Florida Bar and the Grievance Committee for the Eleventh Judicial Circuit of The Florida Bar "to review the conduct of the participants in this case with a view to disciplinary action and disbarment."
The assigned judge was of the opinion that the investigation and report were authorized under the decisions of this court in In re Report of Grand Jury, 1943, 152 Fla. 154, 11 So.2d 316; Owens v. State, Fla. 1952, 59 So.2d 254; and Ryon v. Shaw, Fla. 1955, 77 So.2d 455, and declined to grant the State Attorney's motion to suppress the portion of the interim report in question. However, upon the motion of John Wright, the attorney named in the report who had been appointed guardian ad litem of the estate, the assigned judge expunged from the record the statement in the interim and final reports finding that Wright was "unfit to practice law and to perform the functions of an officer of the Court" on the ground that this conclusion was not supported by the factual allegations made therein. This order was appealed by the State and was consolidated for oral argument with the appeal in the instant case. See State ex rel. Stephenson v. Wright, 93 So.2d 104.
The ultimate question here is whether a grand jury may investigate the official conduct of a judge and his appointees, of the court of which it is an arm and file a report of its investigation which is openly and frankly slanderous as to the court appointees and contemptuous as to the judge, see Coons v. State, 191 Ind. 580, 134 N.E. 194, 20 A.L.R. 900, without at the same time filing indictments against them. We have concluded that such a report goes far beyond any authority which, by judicial decision, has been conferred upon grand juries in this state.
This court is committed to the rule that a grand jury may investigate "every offense that affected the morals, health, sanitation, and general welfare of the county," as well as "county institutions, buildings, offices, and officers and * * * make due presentment concerning their physical, sanitary, and general condition." In re Report of Grand Jury, supra, 152 Fla. 154, 11 So.2d 316, 318. They may make a "fair" report on their findings, even though the report incidentally reflects negligence or incompetence on the part of the public official or officials responsible for undesirable "physical, sanitary and general conditions" reported by them. Owens v. State, supra, 59 So.2d 254, 256; Ryon v. Shaw, supra, 77 So.2d 455.
But except for the decisions of a New York court in Matter of Jones, 101 App. Div. 55, 609, 92 N.Y.S. 275 (not followed in later New York decisions, see In re Wilcox, 153 Misc. 761, 276 N.Y.S. 117, 126), of the Supreme Court of New Jersey in In re Presentment by Camden County Grand Jury, 1952, 10 N.J. 23, 89 A.2d 416, *102 and of a District Court of Appeal in California, Irwin v. Murphy, 129 Cal. App. 713, 19 P.2d 292, 293 (a libel suit, not a motion to expunge), no authority has been found for grand juries to make reports of undesirable conditions found by them, if the report charges or casts reflection of misconduct or maladministration upon a public officer, unless the report is followed by an indictment of the officer. And it is held even by the New York and New Jersey courts that a grand jury is not authorized to elect to file a presentment rather than to find an indictment, if the misconduct or maladministration amounts to a crime for which an indictment may be had. See In re Jones, supra; Appeal of Messano, 1954, 16 N.J. 142, 106 A.2d 537.
The parties here are not in agreement as to whether the report in question discloses the commission of a crime by the principals. In the brief filed on behalf of the grand jury, it is stated that the report does not charge the principals with a crime because it does not allege that they willfully or corruptly performed or failed to perform their duties. But it at least convicted them  without indictment, without published evidence, without trial, and without due process of law  of wrongdoing little short of a crime, inevitably blackening their reputations and destroying them in their profession. Such a conviction by a grand jury is not far removed from and is no less repugnant to traditions of fair play than lynch law. The medieval practice of subjecting a person suspected of crime to the rack and other forms of torture is universally condemned; and we see little difference in subjecting a person to the torture of public condemnation, loss of reputation, and blacklisting in their chosen profession, in the manner here attempted by the grand jury. The person so condemned is just as defenseless as the medieval prisoner and the victim of the lynch mob; the injury to him is just as fatal as if he had been charged with and convicted of a crime. As stated in People v. McCabe, 148 Misc. 330, 266 N.Y.S. 363, 367, a case frequently cited in denouncing grand jury reports such as that with which we are here concerned:
"A presentment [report] is a foul blow. It wins the importance of a judicial document; yet it lacks its principal attributes  the right to answer and to appeal. It accuses, but furnishes no forum for denial. No one knows upon what evidence the findings are based. An indictment may be challenged  even defeated. The presentment is immune. It is like the `hit and run' motorist. Before application can be made to suppress it, it is the subject of public gossip. The damage is done. The injury it may unjustly inflict may never be healed."
The wisdom of the foregoing rule is demonstrated by the Grand Jury report in the Wright case, 93 So.2d 104. Wright was castigated, humiliated and embarrassed by a presentment just short of indictment, although the record and holding of the trial court showed him guilty of no wrongdoing. On the contrary, the Grand Jury presentment itself in one instance recognized the important service that Mr. Wright had rendered in preventing the entry of a substantial judgment against the estate of Mrs. Dowling.
For the future guidance of the grand juries of this state, we repeat the admonition of In re Report of Grand Jury, supra, 152 Fla. 154, 11 So.2d 316, 318, that a grand jury "will not be permitted to single out persons in civil or official position to impugn their motives, or by word, imputation, or innuendo hold them to scorn or criticism. * * * Neither will they be permitted to speak of the general qualification or moral fitness of one to hold an office or position. * * *" Our holding in this respect is in line with the great weight of authority in this country that "it is improper for a grand jury to present with words of censure and reprobation a public official or other person by name without presenting him for indictment and the accused has the right to apply to the court to have the objectionable matter expunged from the court records." Ex parte Faulkner, *103 1952, 221 Ark. 37, 251 S.W.2d 822, 824, and cases cited. If in the course of their investigation of general public affairs they find that neglect or ineptitude is responsible for an undesirable condition, the public welfare dictates that they may make their report even though it incidentally points to an official or officials as responsible therefor. But, as stated in In re Report of Grand Jury, Utah 1953, 260 P.2d 521, 527, "While much good can result from a grand jury calling attention to conditions which they find to be in need of remedying, when the report goes further and impugns the motives and conduct of public officials, the possibility of damaging the reputation of blameless public officials overshadows the good which might result to the public from the filing of such a report."
We have not overlooked the dictum in In re Report of Grand Jury (Graves case), supra, 152 Fla. 154, 11 So.2d 316, 319, that "if the grand jury makes an investigation on its own initiative and reaches the conclusion that the circumstances warrant suspension rather than indictment or it may be both, it would be derelict in its duty if it did not bring the matter of suspension to the attention of the Governor." In that case, the public official in question had been indicted by a previous grand jury and the indictment called to the attention of the prosecuting officials by a subsequent grand jury; and it was against that background that this court declined to expunge the report of a third grand jury recommending that he be removed from office by the Governor. It is noteworthy that in the Graves case, supra, the Grand Jury was further investigating after indictment a constable, who is an executive officer subject to suspension by the Governor as chief executive of the state; whereas, in this case the Grand Jury was investigating a circuit judge, vested with judicial and discretionary powers by our Constitution and subject to removal only by way of impeachment.
The line of demarcation between a legitimate grand jury report and one which unfairly castigates a public official, without filing an indictment, may be difficult to draw in any given case; but that is no reason for ignoring and failing to observe any line. If the report exceeds permissible limits, the assigned judge has the right to expunge the objectionable matter from the report in the exercise of "its inherent power to preserve the integrity of its records or to correct the action of one of its appendages where such action constitutes a violation of court rules or is in excess of its powers." Application of United Electrical, Radio & Mach. Workers, D.C.S.D.N.Y. 1953, 111 F. Supp. 858, 862.
From what has been said, it is clear that the grand jury, by the report in question, exceeded the permissible bounds set forth in In re Report of Grand Jury, supra, as quoted above, as to all principals, assuming arguendo that the court appointees were public officials. In addition, it made a judicial inquisition into and report upon the manner in which a judge of the very court of which it is an appendage exercised his judicial discretion. If its investigation disclosed that such discretion was exercised willfully and corruptly, it was its duty to return an indictment against him. See Ex parte Amos, 93 Fla. 5, 112 So. 289. If no such criminal conduct was disclosed, it had no further jurisdiction in the matter.
In announcing the foregoing views we do not necessarily approve of the manner in which certain phases of the litigation under investigation were handled; indeed, had some of the orders been brought here for review, it well may be that we would have entered judgments differing from those of the trial judge. The decisions made by the trial judge were, however, the exercise of a discretionary power vested in him by our organic law and from which no appeal was taken by the interested parties. It is not official misconduct for a judge to make a mistake when operating within the scope of the power vested in him by law.
In bringing this phase of the matter to a close we feel impelled to commend Honorable George Brautigam, the State Attorney for the Eleventh Judicial Circuit at the *104 time of the presentment in question, for promptly asserting and advocating the rights of the general public in the principles of personal rights and freedom discussed and pronounced herein. His intervention for such purpose was made in the face of great obstacles and during a tornado of adverse public feeling that was generated by the improper presentment complained of. Unlike Pilate, he did not yield to what appeared at the moment to be the popular side of a controversy but performed his duty according to the dictates of his own conscience, as he had the right to do. Subsequent public events indicate he paid a high price for his devotion to duty. Such courageous public service is worthy of this commendation.
The order of the assigned circuit judge refusing to grant the motion to suppress filed by the State Attorney is reversed, with directions to expunge the offending matter from both the interim and final report of the grand jury.
It is so ordered.
TERRELL, C.J., and HOBSON, ROBERTS, DREW, THORNAL and O'CONNELL, JJ., concur.
THOMAS, J., not participating because of illness.