WIGGINTON, Judge.
Appellants seek review of a final order denying their motion to strike and expunge from the records a portion of a report presented by a grand jury of Gulf County. It is appellants’ contention that the portion of the report sought to be stricken and expunged is improper, illegal, and beyond the power or authority of the grand jury to present.
It appears from the record that a special grand jury was impaneled by the Circuit Court of Gulf County and charged with the *765 duty of investigating and making a report and recommendations respecting the operation of the public school system of that county. After completing its assigned duties the grand jury filed its final report which dealt extensively and in detail with the organization and operation of the county school system, making certain specific recommendations for improvements and commending both the county school superintendent and the county school board for the efficient and constructive manner in which they were operating the school system. However, the grand jury did find occasion to criticize the manner in which one department of the school system was being operated. In its report it included the following paragraph, to wit:
“This Grand Jury, after its investigations, has found gross inefficiencies and misfeasance in that department of the Gulf County School System charged with responsibility for administrating programs relative to Gulf County lunch rooms, attendance and testing programs. The Grand Jury had learned from the School Superintendent and members of the Gulf County School Board that the inefficiencies above referred to would be remedied before the 1968-1969 school term. However,, the Grand Jury learned this day, that the remedial action is not contemplated during the 1968-1969 school term. The condition referred to above being established as a fact with the full knowledge of the School Superintendent and School Board; therefore, we recommend that the Governor of the State of Florida investigate the lack of action referred to above and take appropriate action.”
Appellants’ motion to strike the above-quoted portion of the grand jury report was heard and denied by the court. Such ruling is challenged as error on the ground that the questioned criticism by the grand jury was improper and outside the scope of its authority in that it charged appellants in their official capacities with gross inefficiencies and misfeasance without accompanying the presentment with criminal indictments and without specifying the grounds on which the general criticisms were made.
A careful analysis of the challenged portion of the grand jury’s report reveals that it does not charge appellants with gross inefficiencies or misfeasance in the performance of their official duties as contended by them. The inefficiencies and misfeasance referred to in the report were found to exist in one of the departments of the county school system which has the responsibility for administering lunch room, attendance, and testing programs. The report does not indicate whether the inefficiencies found to exist result from regulations and guidelines promulgated by the Department of Health, Education and Welfare of the United States or by the State Department of Education over whom appellants have no control, or by personnel in the employ of appellants over whom they would be expected to have supervision and direction. The report does state that appellants had personal knowledge of the inefficiencies to which the grand jury referred, and although they had represented that such conditions would be remedied before the commencement of the current school term, no remedial action had been taken. The grand jury’s recommendation to the Governor of this state was that an investigation be made of appellants’ failure to take the promised action looking to the correction of the inefficiencies found to exist, but not to any alleged inefficiencies or misfeasance on the part of appellants themselves.
As a matter of fairness, the grand jury should have been more specific in detailing the facts which constituted the inefficiencies to which it referred in its report so that the court and the public could form an independent judgment as to whether inefficiencies and misfeasance did in fact exist. Had this been done, the appellants would have been in a better position to defend their action in the court of public opinion by replying to the criticism levelled against the school system by the report. We are not aware, however, of any established principle *766 of law that would justify expunging the report from the public records of the county merely because it lacked a desirable degree of specificity.
It should be borne in mind that the grand jury was especially impaneled and directed by the court to investigate and present by its report its findings and recommendations concerning the operation of the school system. The report is in many respects laudatory of the manner in which appellants are discharging their official functions in the operation of the county school system. Since the grand jury found one department of the system to be operating in what it considered to be an inefficient manner, which inefficiencies had been discussed with appellants, made known to them and which they had indicated would be corrected, the grand jury was under a duty to include this finding in its report and recommend that such steps be taken by other appropriate authority as may be necessary to correct that condition.
In the early case of In re Report of Grand Jury [1] our Supreme Court said:
“Every person who assumes the duties of public office does so with the knowledge that his official conduct is constantly under scrutiny by the public. For the purpose of detecting abuses of the trust so imposed, the law has erected what may be termed a three way switch, one of which leads to the Governor’s office, one to the grand jury room, and one to the primary. Rectitude of official conduct is the only refuge from a plethora of light from these sources. At any rate, it is idle for one to think that he can administer the affairs of his office with one strabis-mic eye on the grand jury and the Governor and the other in pursuit of a course of conduct contrary to public morals. Public office is the most important trust democratic government vests in the citizen. It is important because the integrity level of the political unit rises and falls with that of its official leadership. The honest officer is not adverse to having the light turned on and if he objects, there arises a shadow of suspicion that may prompt a grand jury inquisition.”
It would appear that appellants indulge an unwarranted degree of sensitivity to what they consider to be an assault upon their personal integrity and ability, as well as their stewardship of the county school system. We do not think that the facts justify such over-reaction. As to their place in the scheme of governmental affairs, and their vulnerability to proper criticisms by a county grand jury, our Supreme Court in Owens v. State[2] said:
“In a democracy like ours public employees and officials, whether elective or appointed are not to forget that they have no proprietary interest in the office or the employment committed to them, they are trustees of the people and may be called on at any time to render an account of their trusteeship. It is not required that they be charged with crime or irregular conduct, if they are incompetent or lax in the performance of the duty imposed on them, if they are lacking in the common courtesy attached to the duty vested in them, whatever the delinquency may be, the Grand Jury has a right to investigate and make a fair report of its findings.
“There are, of course, limitations beyond which a Grand Jury may not go. It will not be permitted to censure a public official, impugn his motives, or hold him up to criticism without cause, neither should they pry into one’s personal affairs at the behest of designing groups * *
A careful reading of the questioned portion of the grand jury’s report refutes the notion that its purpose or effect is to censure appellants, impugn their motives, pry *767 into their personal affairs, or to hold them up to criticism without cause.
In an effort to recapitulate the proper rules of law governing the permissible limits within which a county grand jury must operate in the formulation and presentment of its report, our Supreme Court, in State ex rel. Brautigam v. Interim Report of Grand Jury,[3] said:
“For the future guidance of the grand juries of this state, we repeat the admonition of In re Report of Grand Jury, supra, 152 Fla. 154, 11 So.2d 316, 318, that a grand jury ‘will not be permitted to single out persons in civil or official position to impugn their motives, or by word, imputation, or innuendo hold them to scorn or criticism. * * * Neither will they be permitted to speak of the general qualification or moral fitness of one to hold an office or position. * * * ’ Our holding in this respect is in line with the great weight of authority in this country that ‘it is improper for a grand jury to present with words of censure and reprobation a public official or other person by name without presenting him for indictment and the accused has the right to apply to the court to have the objectionable matter expunged from the court records.’ Ex parte Faulkner, 1952, 221 Ark. 37, 251 S.W.2d 822, 824, and cases cited. If in the course of their investigation of general public affairs they find that neglect or ineptitude is responsible for an undesirable condition, the public welfare dictates that they may make their report even though it incidentally points to an official or officials as responsible therefor. But, as stated in In re Report of Grand Jury, 1953, 123 Utah 458, 260 P.2d 521, 527, ‘While much good can result from a grand jury calling attention to conditions which they find to be in need of remedying, when the report goes further and impugns the motives and conduct of public officials, the possibility of damaging the reputation of blameless public officials overshadows the good which might result to the public from the filing of such a report.’ ”
It is our considered view that the report of the grand jury in the case sub judice does not transgress the bounds delimited by the criteria set by the Supreme Court in the Dade County case quoted above. The order appealed is accordingly affirmed.
JOHNSON, C. J., and SPECTOR, J., concur.

. In re Report of Grand Jury, 152 Fla. 154, 11 So.2d 316, 319.

. Owens v. State (Fla.1952), 59 So.2d 254, 256. See also Ryon v. Shaw (Fla.1956), 77 So.2d 455, 48 A.L.R.2d 713.

. State ex rel. Brautigam v. Interim Report of Grand Jury (Fla.1957), 93 So.2d 99, 102, 103.