CROSS, Chief Judge.
James H. Boyd, Supervisor of Elections of Brevard County, appeals an order denying his motion to expunge from the public records an interim Grand Jury Report. We reverse.
The interim report was returned by the Brevard County Grand Jury on November 13, 1970, and filed in open court in the Circuit Court of Brevard County on the same date. The report was highly critical of the performance of duty of the County Supervisor of Elections. Although affirmatively finding that the return of criminal indictments was not warranted, the report drew the conclusions that the supervisor’s conduct in office constituted misfeasance, neglect of duty, and gross incompetence. The report recommended that the supervisor be suspended from office.
The supervisor filed a motion to expunge the report from the public records on the ground that the Grand Jury had no authority to make a report criticizing him by name or reference, without indicting him. The motion was denied, and this appeal followed.
The general rule in Florida, as in most jurisdictions, is that a grand jury may not single out persons in civil or official positions to impugn their motives, or by word, imputation, or innuendo hold them to scorn or criticism, or present such persons with words of censure or reprobation, without presenting them for indictment. This rule, and the reasons for its existence, were clearly set forth by the Florida Supreme Court in State ex rel. Brautigam v. Interim Report of Grand Jury, Fla.1957, 93 So.2d 99.[1] There the court stated:
“In the brief filed on behalf of the grand jury, it is stated that the report does not charge the principals with a crime because it does not allege that they willfully or corruptly performed or failed to perform their duties. But it at least convicted them — without indictment, without published evidence, without trial, and without due process of law — of wrongdoing little short of a crime, inevitably blackening their reputations and destroying them in their profession. Such a conviction by a grand jury is not far removed from and is no less repugnant to traditions of fair play than lynch law. The medieval practice of subjecting a person suspected of crime to the rack and other forms of torture is universally condemned; and we see little difference in subjecting a person to the torture of public condemnation, loss of reputation, and blacklisting in their chosen' profession, in the manner here attempted by the grand jury. The person so condemned is *711 just as defenseless as the medieval prisoner and the victim of the lynch mob; the injury to him is just as fatal as if he had been charged with and convicted of a crime. As stated in People v. Mc-Cabe, 148 Mise. 330, 266 N.Y.S. 363, 367, a case frequently cited in denouncing grand jury reports such as that with which we are here concerned:
“ ‘A presentment [report] is a foul blow. It wins the importance of a judicial document; yet it lacks its principal attributes' — the right to answer and to appeal. It accuses, but furnishes no forum for denial. No one knows upon what evidence the findings are based. An indictment may be challenged- — even defeated. The presentment is immune. It is like the “hit and run” motorist. Before application can be made to suppress it, it is the subject of public gossip. The damage is done. The injury it may unjustly inflict may never be healed.’
“For the future guidance of the grand juries of this state, we repeat the admonition of In re Report of Grand Jury, supra, 152 Fla. 154, 11 So.2d 316, 318, that a grand jury ‘will not be permitted to single out persons in civil or official position to impugn their motives, or by word, imputation or innuendo hold them to scorn or criticism. * * * Neither will they be permitted to speak of the general qualification or moral fitness of one to hold an office or position. * * * ’ Our holding in this respect is in line with the great weight of authority in this country that ‘it is improper for a grand jury to present with words of censure and reprobation a public official or other person by name without presenting him for indictment and the accused has the right to apply to the court to have the objectionable matter expunged from the court records.’ Ex parte Faulkner, 1952, 221 Ark. 37, 251 S.W.2d 822, 824, and cases cited. If in the course of their investigation of general public affairs they find that neglect or ineptitude is responsible for an undesirable condition, the public welfare dictates that they may make their report even though it incidentally points to an official or officials as responsible therefor. But, as stated in In re Report of Grand Jury, Utah 1953, [123 Utah 458], 260 P.2d 521, 527, ‘While much good can result from a grand jury calling attention to conditions which they find to be in need of remedying, when the report goes further and impugns the motives and conduct of public officials, the possibility of damaging the reputation of blameless public officials overshadows the good which might result to the public from the filing of such a report.’ ”
The instant case is not one in which the Grand Jury, in fairly reporting on some undesirable condition found to exist, incidentally points to an official responsible therefor, as in In re Gulf County Grand Jury, Fla.App.1969, 224 So.2d 764. The Grand Jury in the instant case reported testimony concerning the inefficient manner in which the supervisor’s office was conducted. The report stated that employee morale was very low, and that county officials indicated that the supervisor was “almost impossible to deal with.” The supervisor was stated to appear to have very little knowledge of the statutes and exhibited a tendency “to interpret the statutes contrary to the interpretation of his deputies and of the Secretary of State’s office.” Finally, the report concluded that the supervisor’s conduct constituted misfeasance, neglect of duty and gross incompetence, and demonstrated an inability to perform his official duties.
The report is clearly a direct attack upon the Supervisor of Elections regarding his performance of duty, without indicating the supervisor. As such, the report exceeds permissible limits as set forth in Brautigam, *712 and the lower court should have granted the motion to expunge.
Accordingly, the order denying the motion to expunge is reversed, and the cause remanded with directions that the report be expunged.
OWEN and MAGER, JJ„ concur.

. Earlier Florida cases appeared to authorize such critical reports whenever the grand jury found a suspension was warranted, In re Report of Grand Jury, 1943, 152 Fla. 154, 11 So.2d 310, 319, or when incompetence, laxness in performance of duty, .or lack of common courtesy was found, Owens v. State, Fla. 1952, 59 So.2d 254, 256. The court in Brautigam, however, discounted the statements concerning suspensions in In re Report of Grand Jury, supra, ns dictum, and indicated that the report in Owens v. State, supra, had only incidentally reflected negligence or incompetence on officials responsible for undesirable conditions found to exist.