ERVIN, Justice.
We have for review in this direct appeal the convictions of Craig Vernon Reed and Gene Roger Reed of first degree murder without recommendation of mercy.
The Appellants, as well as one Joseph St. Ana, were indicted by the Broward *71 County Grand Jury in 1970. St. Ana was granted immunity by the State in return for his testimony at the Appellants’ trial. According to St. Ana, two pistols, a .32 caliber and a .38 caliber, were used by the Reeds to murder their victim. During the course of their trial, .32 and .38 caliber firearms were placed in evidence over the objection of counsel. The .32 caliber pistol was found in a shoe box in a duct in a dwelling house occasionally occupied by Craig Vernon Reed. The owner of the searched premises, Irene Tavares, was present at the time of the search and consented to it. The .38 caliber revolver was obtained from Gene Reed’s home. This house was searched after the police obtained a search warrant based upon affidavits from an investigator, John Hovey, and two of the Reeds’ friends, Joyce Johnson and Irene Tavares. The jury found defendants guilty of first degree murder and did not recommend mercy.
On appeal, Appellants raise four issues:
1. Whether the indictments upon which they were tried were illegal because the Broward County Grand Jury which issued and presented the said indictments is illegal.
2. Whether the trial court’s failure to permit the jury to separately consider the issues of guilt/innocence and mercy/death and to provide standards for each of these determinations requires a cancellation of the death sentence.
3. Whether the imposition of the death penalty should be reversed as cruel and unusual punishment.
4. Whether the trial court erred in denying their motions to suppress and exclude the evidence obtained under the search warrant.
Issues two and three have been rendered moot by the decision of Supreme Court of the United States in Furman v. Georgia, 1972, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, invalidating capital punishment statutes, and the decision of this Court in Donaldson v. Sack, 265 So.2d 499, filed July 17, 1972, setting forth the effect Furman will have on Florida criminal trials. Because of these decisions, Appellants’ sentences must be changed from death to life imprisonment. With this cancellation of their death sentences, the bifurcated trial issue becomes moot.
We have carefully considered Appellants’ remaining two issues and find nothing therein to justify a new trial.
It is Appellants’ contention that the grand jury which indicted them was illegal because the Florida Constitution, 1968 Revision, eliminated Section 10 of the Declaration of Rights of the Constitution of 1885 which specifically provided for grand juries. This argument previously has been considered by this Court, and we have held it to be without merit
“because (1) our Florida grand jury system is derived from the common law, except as otherwise modified, and (2) the 1968 constitutional revision did not invalidate the grand jury system. See Fla.Stat. § 2.01, F.S.A.; Cotton v. State, 85 Fla. 197, 95 So. 668 (1923); Re Report of Grand Jury, 152 Fla. 154, 11 So. 2d 316 (1943); Jones v. State, 18 Fla. 889 (1882). In fact, Article I, Section 15, Florida Constitution 1968, recites ‘(a) no person shall be tried for capital crime without presentment or indictment by a grand jury. . . .’” Portee v. State, Fla. 1971, 253 So.2d 866,867.
As their last point Appellants contend the affidavits used as the basis for the issuance of the search warrant for the premises of Gene Reed were based upon hearsay and were insufficient under the guidelines set forth by the Supreme Court of the United States in Aguilar v. Texas, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723. The Aguilar affidavit provided in pertinent part:
“Affiants have received reliable information from a credible person and do *72 believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law.”
In holding a search warrant issued on the basis of that affidavit improper, the Court said:
“Here the 'mere conclusion’ that petitioner possessed narcotics was not even that of the affiant himself; it was that of an unidentified informant. The affidavit here not only ‘contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein,’ it does not even contain an ‘affirmative allegation’ that the affiant’s unidentified source ‘spoke with personal knowledge.’ For all that appears, the source here merely suspected, believed or concluded that there were narcotics in petitioner’s possession. The magistrate here certainly could not ‘judge for himself the persuasiveness of the facts relied on * * * to show probable cause.’ He necessarily accepted ‘without question’ the informant’s ‘suspicion,’ ‘belief’ or ‘mere conclusion.’
“Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, [11 L.Ed.2d 887,] was ‘credible’ or his information ‘reliable.’ Otherwise, ‘the inferences from the facts which lead to the complaint’ will be drawn not ‘by a neutral and detached magistrate,’ as the Constitution requires, but instead, by a police officer ‘engaged in the often competitive enterprise of ferreting out crime,’ * * * [citations omitted] or, as in this case, by an unidentified informant.” Aguilar v. Texas, supra, at 378 U.S. 113-115, 84 S.Ct. at 1513. (Footnotes omitted.)
In contrast to the Aguilar affidavits, those in the instant case contained sufficient information to enable the judge who issued the warrant to independently conclude that it should be issued. The affidavit of John Hovey, an investigator with the State Attorney of the Seventeenth Judicial Circuit, stated that he had talked
“with Joseph St. Ana, Jr., who told your affiant that he was present when Earl Estep was murdered by Craig Reed and Gene R. Reed. St. Ana told your af-fiant that the killing was done with a .32 caliber pistol and a .38 caliber revolver. St. Ana has testified under oath at a hearing held in Broward County, Florida, to the above facts. St. Ana told your affiant that Gene Reed had in his possession before and after the murder of Earl Estep the .38 caliber revolver noted above. Your affiant has spoken with Bob Valero who told your affiant that he, Bob Valero, is Gene R. Reed’s bondsman. Your affiant has spoken also with Joyce Ann Johnson and Irene Ta-vares concerning this case. Joyce Ann Johnson has told your affiant that she was living at the premises to be searched with Gene R. Reed and saw Gene R. Reed in possession of the .38 caliber revolver before and after the murder.”
He further alleged that based upon his independent investigation he believed the information contained in the affidavit was true.
Joyce Ann Johnson’s affidavit provided in pertinent part as follows:
“[0]n December 30, 1969, your affiant saw Gene R. Reed both before and after the murder of Earl Estep in possession of the .38 caliber revolver described above. Gene R. Reed told your affiant *73 that he and Craig Reed had killed Earl Estep with the above revolver and another gun. The other gun was recovered from a home in Dade County, Florida, occupied at the time of the recovery by your affiant’s mother, Irene Tavares. Gene R. Reed told your affiant on the day of the murder, being December 30, 1969, that he and Craig Reed had killed Earl Estep with the above-described .38 caliber revolver and the other gun, since recovered, as described above. Gene R. Reed told me that Estep bled like a stuck pig. “Your affiant knows Gene R. Reed’s daughter, Dona M. Reed. Dona M. Reed, on December 31, 1969, told your affiant in the presence of your af-fiant’s mother, Irene Tavares, that Gene R. Reed, her father, told her he had buried the .38 caliber revolver on the curti-lage or yard at his house located at 3030 N.W. 152 Terrace, Dade County, Florida. Your affiant has been a personal friend of Dona M. Reed, and based upon your affiant’s past experience with Dona M. Reed believes her to be reliable and to be a truthful person.”
The third and final affidavit was submitted by Irene Tavares, who corroborated the averments contained in Joyce Johnson’s affidavit relative to Dona Reed’s statement as to the location of the .38 caliber revolver.
The affidavits clearly meet Aguilar’s requirements regarding hearsay. The informants were identified; there are “affirmative allegation[s] that the affiant[s] spoke with personal knowledge of the matters contained therein”; and there were “affirmative allegations” that the sources “spoke with personal knowledge.” Without question there was presented sufficient information to enable the judge to independently conclude there was probable cause to issue the search warrant.
For the above-stated reasons, we reduce the Appellants’ sentences to life imprisonment. See Anderson v. State et al., Fla., 267 So.2d 8, filed September 8, 1972.
ROBERTS, C. J., and CARLTON, BOYD, McCAIN and DEKLE, JJ„ concur.
ADKINS, J., concurs in judgment.